IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| W.W. and T.G.W.<br>      **Plaintiffs**,<br><br>   v.<br><br>**Fleetwood Area School District**<br>      **Defendant** | CIVIL ACTION<br><br>NO:_____<br><br>COMPLAINT<br><br>(Jury Trial Demanded) |

## COMPLAINT

Plaintiffs William Warren and Tanya Garcia Warren ("W.W." and "T.G.W." or "Parents"), bring this action under Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, and Chapter 15 of the Pennsylvania Code. Parents are seeking compensatory damages from Defendant Fleetwood Area School District ("Defendant" or "the District") for its discrimination against Parents on the basis of their son C.W.'s disabilities.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the Section 504 and Americans with Disabilities Act claims pursuant to 28 U.S.C. § 1331, as those claims arise under the laws of the United States.

2. This Court has supplemental jurisdiction over claims made pursuant to 22 PA. Code § 15 under 28 U.S.C. § 1367, as those claims are so related to the claims that are within this Court's original jurisdiction that they form part of the same case or controversy.

1

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2), because the events and omissions giving rise to the claims in this case arose in this judicial district and all the parties reside within the jurisdiction of this Court.

## PARTIES

4. Plaintiffs W.W. and T.G.W. are residents of Richmond Township in Fleetwood, Pennsylvania. They are parents to C.W., a student who attends school in the Fleetwood Area School District.

5. C.W. is an eight-year-old boy on the autism spectrum. Symptoms of C.W.'s disorder include responding suddenly and emotionally to sensory stimuli such as loud noises, and running and hiding or "shutting down" when he is overwhelmed.

6. Defendant Fleetwood Area School District is a public school district located in Fleetwood, Pennsylvania. There are five schools in the District, including Andrew Maier Elementary School ("Andrew Maier") and Richmond Elementary School ("Richmond"). Both have been attended by C.W.

## FACTS

7. From kindergarten to second grade, C.W. attended Andrew Maier Elementary School in the District.

8. During his attendance at Andrew Maier, the District provided C.W. with an Individualized Education Program ("IEP") for Autism and Speech and Language Impairment.

9. The IEP provided by the District included specially designed instruction developed to address C.W.'s issues with social and emotional functioning, his sensitivity to loud noises and trouble with large, unstructured settings. The District was aware of these issues.

10. While a student at Andrew Maier, C.W. attended A Place to Grow, a daycare facility that cared for him before and after school. A Place to Grow was aware of C.W.'s needs, and provided an environment that was tailored to addressing C.W.'s challenges.

11. A Place to Grow provided C.W. with accommodations such as a locked facility that would not allow him to elope when experiencing sensory overload, help with using the restroom when C.W. declined to do so, and de-escalation when C.W. was experiencing a "melt down."

12. Pursuant to its policy, the District provided its students with transportation between its schools and designated daycare centers.

13. Because A Place to Grow was a daycare center designated for transportation by the District, the District provided transportation between C.W.'s home, A Place to Grow, and Andrew Maier.

14. Parents and C.W. moved to a different home within the District on January 15th, 2016.

15. Because of the change in residency, C.W. was required to attend a different elementary school, Richmond Elementary School.

16. Because A Place to Grow was located outside of the transportation boundary for Richmond Elementary School, the District would not permit C.W. to continue attending daycare there while attending school at Richmond Elementary.

17. The only daycare center designated for transportation to Richmond Elementary School was the YMCA Care Center ("Y Care").

18. Parents visited Y Care several times, to assess whether it was an appropriate daycare center for C.W.

19. Upon observing Y Care, parents noted many conditions of the facility and staff that would exacerbate C.W.'s social and emotional functioning challenges or provide inadequate support for C.W.'s struggles.

20. Parents observed that Y Care was located in a gymnasium, with a high noise level that would trigger C.W.'s symptoms. Additionally, Parents observed a lack of close supervision and monitoring of the many students that were there. Parents observed that Y Care would not be appropriate for C.W.

21. Parents delayed C.W.'s matriculation at Richmond Elementary School until the end of February 2016 while they attempted to address their concerns with the District's designated daycare center.

22. Parents raised their concerns with the District, and attempted to find an alternative for C.W. independently.

23. Parents located a suitable in-home daycare center within the District's boundaries and notified the District.

24. The District informed Parents that although the daycare was located within the District's transportation boundaries, because the daycare was not a designated bus stop, C.W. would be required to walk from the daycare to the end of the road, where a designated bus stop was located.

25. Parents were concerned about this option because the designated bus stop the District requested C.W. walk to was on a rural back road with no pedestrian clearances, no sidewalk, and no shoulder. Additionally, the bus stop was on a blind hill where drivers would be unable to see pedestrians. This would have been an unsafe situation for any young child, and especially dangerous for C.W.

26. The District also proposed that C.W. attend an unlicensed home day care, which had no certifications and was not subject to any regulations.

27. Before Parents could explore this as an option for C.W.'s daycare, they were informed by the person who ran the daycare that C.W. would overburden her, and she could not care for him.

28. Before the issue was resolved, C.W. began attending Richmond Elementary. Because the District refused to provide transportation to the in-home daycare that was selected by Parents, Parents provided for C.W.'s before and after school care and transportation themselves.

29. Parents hired a nanny to care for C.W. before and after school. Additionally, Parents had to forego employment opportunities due to the instability of C.W.'s daycare plan. When there were no other options, parents had to leave or not attend work to care for C.W. before or after school.

30. Parents of non-disabled children were provided with daycare and transportation from the District.

31. In November 2016, a new daycare center opened within the Richmond Elementary transportation limits.

32. This new daycare was equipped to address C.W.'s needs, and Parents were able to send C.W. there and receive transportation from the District.

33. Parents have not been reimbursed for the expenses they underwent during the District's failure to grant their request for transportation to a suitable daycare center.

## COUNT I: 504 OF THE REHABILITIATION ACT OF 1973 – FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS

34. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

35. Fleetwood Area School District is subject to Section 504 because it is a recipient of federal funding.

36. Parents are individuals associated with a student with a disability, as they are the Parents of an autistic student who receives specially designed instruction from the District.

37. C.W. is an individual who suffers from mental impairments that substantially limit several major life activities, including but not limited to learning, caring for and advocating for himself, responding appropriately to sensory stimuli, and interacting with others.

38. At all relevant times, C.W. was a qualified handicapped person with respect to education services because he was able to attend school and participate in educational programs.

39. Plaintiffs assert that the District discriminated against them on the basis of C.W.'s disability by denying them an equal opportunity to participate in non-academic and extracurricular services and activities.

40. Under Section 504, nonacademic and extracurricular services and activities include transportation. 34 C.F.R § 104.37(a)(2).

41. Section 504's mandate to provide equal opportunity participation in non-academic and extracurricular services and activities is part of its broader prohibition against discrimination, which provides that "[n]o qualified handicapped person shall, on the basis of a handicap, be excluded from participation in, be denied the benefits of, or otherwise be

6

subjected to discrimination under any program or activity which receives federal financial assistance." 34 C.F.R. § 104.4.

42. Plaintiffs assert that from January through November 2016, the District discriminated against Plaintiffs in violation of Section 504 by failing to reasonably accommodate their need for transportation services between school and daycare, which is a service that the District provides to the parents of C.W.'s non-disabled peers.

## COUNT II: VIOLATION OF CHAPTER 15 OF THE PENNSYLVANIA CODE

43. Plaintiff hereby incorporates the allegations of the foregoing paragraphs into Count II.

44. Chapter 15 of the Pennsylvania Code is the state's implementing law for Section 504 and its accompanying regulations. 22 Pa. Code § 15.1(a).

45. Chapter 15 reiterates Section 504's provisions requiring "public educational agencies to ensure that students [with disabilities] have equal opportunity to participate in the school program and extracurricular activities to the maximum extent appropriate to the ability of the protected handicapped student in question." 22 Pa. Code § 15.1(b).

46. Further, "[s]chool districts are required to provide these students with the aids, services and accommodations that are designed to meet the educational needs of protected handicapped students as adequately as the needs of nonhandicapped students are met. These aids, services and accommodations may include, but are not limited to, special transportation..." 22 Pa. Code § 15.1(b).

47. Plaintiffs assert that from January 2016 through November 2016, the District discriminated against Plaintiffs in violation of Chapter 15 by failing to reasonably accommodate their

need for transportation services between school and day care, which is a service that the District provides to the parents of C.W.'s non-disabled peers.

### COUNT III: VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

48. Title II of the ADA is similar to Section 504, but extends the nondiscrimination rule of Section 504 to services provided by "any public entity," without regard to whether the entity is the recipient of federal funds. 42 U.S.C. § 12132.

49. "The remedies, procedures, and rights set forth in [Section 504] shall be the remedies, procedures, and rights [Title II of the ADA] provided to any person alleging discrimination on the basis of disability in violation of [Title II]." 42 U.S.C. § 12133.

50. Plaintiffs assert that from January to November 2016, the District discriminated against Plaintiffs in violation of Title II of the ADA by failing to reasonably accommodate their need for transportation services between school and day care, a service that the District provided to the parents of C.W.'s non-disabled peers.

WHEREFORE, Plaintiffs respectfully request an ORDER:

1. Assuming jurisdiction of this case;
2. Declaring that the District's actions and omissions violate Section 504 of the Rehabilitation Act of 1973, Chapter 15 of the Pennsylvania Code, and Title II of the Americans with Disabilities Act;
3. Directing the District to provide compensatory damages in an amount to be determined at the time of trial.
4. Directing the District to provide reimbursement of costs and attorneys' fees.
5. Granting all other relief deemed just and equitable by the Court.

Respectfully submitted,

Dated: 15 May 2017

                                                     /s/ (203270)
                                       Joshua M. Kershenbaum, Esq. (PA ID: 203270)
                                       Frankel & Kershenbaum, LLC
                                       1230 County Line Road
                                       Bryn Mawr, PA 19010
                                       T: (610) 922-4200
                                       F: (610) 646-0888
                                       E: Josh@MyKidsLawyer.com
                                       *Counsel for Parents*